McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, New York 10019
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
Joseph J. Cherico
jcherico@mccarter.com
*Attorneys for Wells Fargo Bank, National Association*

Hearing Date: Dec. 12, 2018, 3:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| : | |
| In re: : | Chapter 11 |
| : | |
| WILLIAMS WORLDWIDE : | Case No. 18-45676 (CEC) |
| SHIPPING & TRADING, INC., : | |
| : | |
| Debtor. : | |
| : | |

**NOTICE OF MOTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION
FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

TO:     SEE ATTACHED SERVICE LIST

**PLEASE TAKE NOTICE** that on **December 12, 2018, at 3:00 p.m. (Eastern Time)**,

or as soon thereafter as counsel may be heard, Creditor Wells Fargo Bank, National Association

("Wells Fargo"), by and through its attorneys, McCarter & English, LLP, shall move before the

Honorable Carla E. Craig, Chief United States Bankruptcy Judge, at the United States

Bankruptcy Court for the Eastern District of New York, located at the Conrad B. Duberstein

Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800, for an Order granting relief

from the automatic stay so as to proceed in a certain pending foreclosure proceeding in which the

Debtor is a defendant, and granting such other and further relief as the Court may deem

necessary or appropriate.

**PLEASE TAKE FURTHER NOTICE** that, in addition to the accompanying Motion, which sets forth the relevant legal and factual basis upon which the relief requested should be granted, Wells Fargo relies on the accompanying Declaration of Karen Fitzgerald-Kvapil, Supplemental Declaration of Karen Fitzgerald-Kvapil, EDNY Form Declaration and Declaration of Joseph J. Cherico in support of the Motion.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion must be in writing, must conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Eastern District of New York, and must be filed electronically and served upon:  (i) Joseph J. Cherico, McCarter & English, LLP, One Canterbury Green, 201 Broad Street Stamford, Connecticut 06901; (ii) Office of the United States Trustee for the Eastern District of New York, 201 Varick Street, Suite 1006, New York, NY 10014; and (iii) all other parties of interest on or before **December 5, 2018, at 5:00 p.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that your failure to file a timely objection to the Motion shall be deemed:  (i) a waiver of your right to respond to the Motion; and (ii) consent to the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion is requested if objections to the Motion are timely filed.

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider the Motion may be adjourned from time to time, without further notice except as announced in Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that a proposed form of order incorporating the relief sought is submitted herewith.

**McCARTER & ENGLISH, LLP**

Dated:  October 31, 2018

*s/ Joseph J. Cherico*
Joseph J. Cherico (JC 5830)
One Canterbury Green
201 Broad Street
Stamford, CT 06901
Tel: (203) 399-5900
Fax: (203) 399-5800
Email: jcherico@mccarter.com

*Attorneys for Creditor*
  *Wells Fargo Bank, National Association*

28427263.1

## SERVICE LIST

### VIA ECF AND REGULAR MAIL

Karamvir Dahiya, Esq.
Dahiya Law Offices, LLC
75 Maiden Lane
Suite 506
New York, NY 10038
*Attorneys for Debtor*

### VIA REGULAR MAIL

William's Worldwide Shipping & Trading, Inc.
1177 Utica Avenue
Brooklyn, NY 11203
*Debtor-in-Possession*

### VIA ECF

Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
*U.S. Trustee*

## CERTIFICATION OF SERVICE

I, the undersigned, certify under penalty of perjury that on October 31, 2018, I caused the

following to be served on the persons set forth in the Service List annexed to the Notice of

Motion in the manner indicated therein:

1. Notice of Motion of Wells Fargo Bank, National Association for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d), dated October 31, 2018;

2. Motion of Wells Fargo Bank, National Association for Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d), dated October 31, 2018;

3. Declaration of Karen Fitzgerald-Kvapil, dated March 17, 2017, including the exhibits attached thereto;

4. Supplemental Declaration of Karen Fitzgerald-Kvapil, dated May 3, 2017, including Exhibit A attached thereto;

5. EDNY Form Declaration entitled "Relief From Stay – Real Estate and Cooperative Apartments," dated October 29, 2018, including the exhibits attached thereto;

6. Declaration of Joseph J. Cherico, dated October 31, 2018, including Exhibit A attached thereto; and

7. Proposed Form of Order.

I hereby certify that the foregoing statements are true.  I am aware that if any of the foregoing statements is willfully false, I am subject to punishment.

_s/ Joseph J. Cherico_
Joseph J. Cherico

Dated:  October 31, 2018

McCARTER & ENGLISH, LLP
Worldwide Plaza
825 Eighth Avenue, 31st Floor
New York, New York 10019
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
Joseph J. Cherico
jcherico@mccarter.com
*Attorneys for Wells Fargo Bank, National Association*

Hearing Date: Dec. 12, 2018, 3:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| WILLIAMS WORLDWIDE | : | Case No. 18-45676 (CEC) |
| SHIPPING & TRADING, INC., | : | |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION OF WELLS FARGO BANK, NATIONAL ASSOCIATION
FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. 362(d)**

1.    Pursuant to 11 U.S.C. § 362(d), Creditor Wells Fargo Bank, National Association ("Wells Fargo") hereby moves for an Order granting Wells Fargo relief from the automatic stay to proceed with the foreclosure action, captioned *Wells Fargo Bank, National Association, v. William's Worldwide Shipping & Trading, Inc., et al.*, pending in the Supreme Court of New York, County of Kings (Index No. 506108/2016) (the "Foreclosure Action"), which action was commenced prepetition against Williams Worldwide Shipping & Trading, Inc. (the "Debtor") (and other defendants) to foreclose a mortgage on the commercial property owned by the Debtor and located at 1177 Utica Avenue, Brooklyn, New York 11203 (the "Mortgaged Property") and in which a Final Judgment of Foreclosure and Sale and for Related Relief (the "Foreclosure Judgment") was already entered by the Court.

2.    As detailed below, this is the Debtor's second recent Chapter 11 bankruptcy filing. The prior bankruptcy was filed on February 21, 2017 and dismissed by Order of this Court entered on October 19, 2017 due to, among other things, the Debtor's failure to file monthly operating reports and failure to propose a plan of reorganization.  While the prior bankruptcy was filed after the Court in the Foreclosure Action stated at oral argument that Wells Fargo's motion for summary judgment was granted and a written order was pending, the current bankruptcy was filed after the Court in the Foreclosure Action denied the Debtor's attempt to vacate the Foreclosure Judgment and a foreclosure sale was scheduled for November 8, 2018, demonstrating that the Debtor's bankruptcy filings are nothing more than a delay tactic.

3.    As also detailed below, no payments have been made by the Debtor to Wells Fargo since December 20, 2015.  As of the date of the Debtor's bankruptcy petition, Wells Fargo has a claim secured by the mortgage in the amount of at least $883,171.00 (*i.e.,* the amount of the judgment debt), plus pre-judgment interest, post-judgment interest, costs and attorneys' fees as awarded by the Court in the Foreclosure Action and set forth in the Foreclosure Judgment.  On the other hand, according to the most recent appraisal obtained by Wells Fargo and as claimed by the Debtor in its filings in this proceeding, the value of the Mortgaged Property is $600,000. Thus, there is no equity in the Mortgaged Property.  Moreover, the business that the Debtor operated at the Mortgaged Property remains insolvent and the Debtor cannot satisfy its burden of demonstrating that there is a reasonable prospect of a successful reorganization within a reasonable time.  Under these circumstances, the Court should lift the stay and allow Wells Fargo to continue to prosecute the Foreclosure Action.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409.  The legal predicate for relief sought herein is 11 U.S.C. § 362(d).

## FACTUAL BACKGROUND

5.      On October 1, 2018 (the "Petition Date"), the Debtor commenced this case (the "Bankruptcy Case") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York.

6.      The Debtor is a corporation that owns the Mortgaged Property.  Michelle Williams-Libert (the "Guarantor") is the president of the Debtor and is also indebted to Wells Fargo under the loan documents in her capacity as guarantor, as further detailed below.

**The Prior Bankruptcy Case**

7.      This is the second Chapter 11 bankruptcy case filed by the Debtor while the Foreclosure Action has been pending.  The Debtor's first Chapter 11 bankruptcy case was filed in this Court on February 21, 2017 and assigned Case No. 17-40762 (the "First Bankruptcy Case").  Cherico Decl. ¶ 2.[1]

8.      On March 20, 2017, Wells Fargo filed a motion for relief from the automatic stay in the First Bankruptcy Case.  *Id.* ¶ 3.

9.      On May 22, 2017, this Court entered an Order in the First Bankruptcy Case granting Wells Fargo relief from the automatic stay to pursue its rights with respect to the Mortgaged Property.  *Id.* ¶ 4.

---

[1] References to the "Cherico Decl." are to the accompanying Declaration of Joseph J. Cherico, dated October 31, 2018.

10.    Almost immediately after the Order granting Wells Fargo relief from the automatic stay was entered, the Debtor essentially abandoned the First Bankruptcy Case. Among other things, the Debtor stopped submitting monthly operating reports to the Court and failed to propose a plan for reorganization. *Id.* ¶ 5.

11.    As a result, on September 15, 2017, the U.S. Trustee filed a Motion to Dismiss the First Bankruptcy Case, noting that "the Debtor has proven that it is unable or unwilling to properly conduct itself as a debtor-in-possession.  The Debtor has failed to provide proof of insurance renewal and failed to file monthly operating reports.  Also, there are continuing losses to the estate in this case and, as the Debtor does not appear to be able to propose a confirmable plan, there is no likelihood of rehabilitation." *Id.* ¶ 6 (quoting U.S. Trustee's Motion to Dismiss).

12.    The Debtor did not file any opposition to the Motion to Dismiss nor did the Debtor take any action to pursue the First Bankruptcy Case. *Id.* ¶ 7.

13.    On October 11, 2017, this Court held a hearing on the Motion to Dismiss in the First Bankruptcy Case. *Id.* ¶ 8.

14.    On October 19, 2017, this Court entered an Order dismissing the First Bankruptcy Case. *Id.* ¶ 9.

**The Loan To The Debtor**

15.    The Debtor and Wells Fargo entered into a Construction Loan Agreement, dated October 16, 2009 (the "Loan Agreement").  Fitzgerald-Kvapil Decl. ¶ 2 & Ex. A (Loan Agreement).[2]

---

[2] References to the "Fitzgerald-Kvapil Decl." are to the Declaration of Karen Fitzgerald-Kvapil, dated March 17, 2017, which was previously filed in the First Bankruptcy Case and a copy of which accompanies this Motion.

16.    In connection with the Loan Agreement, the Debtor executed a U.S. Small Business Administration Note, dated October 16, 2009 (the "Note"), in favor of Wells Fargo for repayment of the principal amount of $820,000 (the "Loan") at an initial interest rate of 6% per annum, to be adjusted monthly throughout the term of the Loan at the rate of the prime rate plus 2.75%. *Id.* ¶ 3 & Ex. B (Note).

17.    To secure repayment of the Note, the Debtor executed a Mortgage, dated October 16, 2009 (the "Mortgage"), in favor of Wells Fargo. *Id.* ¶ 4 & Ex. C (Mortgage). Under the Mortgage, the Debtor granted Wells Fargo the right to foreclose on the Mortgaged Property in the event of a default under the Note. *Id.*, Ex. C (Mortgage).

18.    To further secure repayment of the Note, the Debtor executed a Commercial Security Agreement, dated October 16, 2009 (the "Security Agreement"), in favor of Wells Fargo. *Id.* ¶ 5 & Ex. D (Security Agreement). Under the Security Agreement, the Debtor granted Wells Fargo a security interest in the Collateral (as defined in the Security Agreement) (the "Collateral"). *Id.*, Ex. D (Security Agreement). Pursuant to the Security Agreement, in the event of a default, Wells Fargo shall have the rights and remedies of a secured party under the Uniform Commercial Code, including the right to take possession and dispose of the Collateral. *Id.*

19.    To further secure repayment of the Note, the Guarantor executed a U.S. Small Business Administration Unconditional Guarantee, dated October 16, 2009 (the "Guarantee"). *Id.* ¶ 6 & Ex. E (Guarantee). Under the Guarantee, the Guarantor unconditionally guaranteed full repayment of all amounts due under the Note. *Id.*, Ex. E (Guarantee).

20. Thereafter, the Debtor executed a Modification Agreement (SBA), dated February 11, 2015, in favor of Wells Fargo (the "Modification Agreement" and, together with the Loan Agreement, the Note, the Mortgage, the Security Agreement, the Guarantee and all other documents executed in connection therewith, the "Loan Documents"). *Id.* ¶ 7 & Ex. F (Modification Agreement). Pursuant to the Modification Agreement, Wells Fargo agreed to allow the Debtor to defer certain payments due under the Note until the maturity date of October 16, 2034 (the "Maturity Date"). *Id.*, Ex. F (Modification Agreement).

21. Pursuant to the Modification Agreement, Wells Fargo agreed to a modified interest rate fixed at 4% per annum for the period from March 20, 2015 through and including July 20, 2016 (the "Modification Period") and the Debtor agreed to make monthly payments of principal and interest in the amount of $3,700 on the 20th day of each month for the Modification Period. *Id.*

22. Under the Modification Agreement, commencing at the end of the Modification Period and continuing until the Maturity Date, Wells Fargo and the Debtor agreed to a new interest rate fixed at 6% per annum, with the Debtor to make monthly payments of principal and interest in the amount of $5,374.12 on the 20th day of each month. *Id.*

23. The Debtor defaulted under the terms of the Loan Documents by, among other things, failing to make the payment due to Wells Fargo on December 20, 2015 and each month thereafter. *Id.* ¶ 9. By letter dated March 28, 2016, Wells Fargo notified the Debtor and the Guarantor that the Debtor was in default under the Loan Documents and, as a result of such default, all sums due under the Loan Documents were accelerated and immediately due and payable (the "Default Notice"). *Id.* ¶ 9 & Ex. G. (Default Notice). Wells Fargo demanded

payment of all sums due under the Loan Documents. *Id.* Despite demand for payment, neither the Debtor nor the Guarantor paid the sums due under the Loan Documents. *Id.*

**The Debtor's Inability To Further Modify The Loan**

24.    After commencement of the Foreclosure Action, the Debtor asked Wells Fargo for an opportunity to further modify the Loan. *Id.* ¶ 10.

25.    Wells Fargo offered the Debtor multiple opportunities to reinstate the Loan – namely, Wells Fargo offered the Debtor the opportunity to bring the Loan current and resume making monthly payments under the Loan Documents. *Id.* ¶ 11.

26.    The Debtor, however, never accepted those opportunities. Instead, the Debtor proposed further modification on terms that were not acceptable to Wells Fargo. *Id.* ¶ 12.

27.    In addition, after initially failing to provide complete financial information requested by Wells Fargo in connection with its review of the Debtor for a potential loan modification or reinstatement of the Loan, the Debtor finally provided financial information that showed any attempt to further modify or reinstate the Loan would be futile. *Id.* ¶ 13. In particular, the Debtor's financial information revealed that the Debtor simply did not have the income necessary to repay the Loan. *Id.*

28.    Although Wells Fargo repeatedly asked the Debtor to provide information demonstrating how the Debtor intends to repay the Loan going forward if there was to be a modification or reinstatement, the Debtor failed to do so. *Id.* ¶ 14.

**The Foreclosure Action**

29.    As a result of the Debtor's payment default, on April 18, 2016, Wells Fargo commenced the Foreclosure Action naming the Debtor, among others, as a defendant and seeking, among other things, to foreclose on the Mortgaged Property. Cherico Decl. ¶ 10.

30.     On May 18, 2016, the Debtor filed an Answer and Affirmative Defenses in the Foreclosure Action. *Id.* ¶ 11.

31.     On July 18, 2016, Wells Fargo filed a Motion for Summary Judgment, Appointment of Referee and Related Relief (the "Motion for Summary Judgment") in the Foreclosure Action. *Id.* ¶ 12.

32.     On September 21, 2016, the Debtor filed an Opposition to the Motion for Summary Judgment in the Foreclosure Action. *Id.* ¶ 13.

33.     On September 26, 2016, Wells Fargo filed a Reply in further support of its Motion for Summary Judgment in the Foreclosure Action. *Id.* ¶ 14.

34.     On September 27, 2016, the parties appeared before the Court in the Foreclosure Action for oral argument on Wells Fargo's Motion for Summary Judgment. *Id.* ¶ 15.  At the Debtor's request, the Court adjourned oral argument of the Motion for Summary Judgment in order to allow the Debtor additional time to attempt to reinstate the Loan. *Id.*

35.     On October 18, 2016, the parties again appeared before the Court in the Foreclosure Action for oral argument on Wells Fargo's Motion for Summary Judgment. *Id.* ¶ 16. The Debtor requested yet another adjournment for additional time to attempt to reinstate the Loan. *Id.*  The Court, however, denied this request. *Id.*

36.     The Court in the Foreclosure Action then heard oral argument on the Motion for Summary Judgment and the Motion was fully submitted at that time. *Id.* ¶ 17.

37.     The Court in the Foreclosure Action stated that a written decision in favor of Wells Fargo on the Motion for Summary Judgment could be expected after January 1, 2017. *Id.* ¶ 18.

38.    On February 21, 2017, the Debtor filed the First Bankruptcy Case, which resulted in a stay of the Foreclosure Action. *Id.* ¶¶ 2, 19.

39.    After this Court entered its Order granting Wells Fargo relief from the stay in the First Bankruptcy Case on May 22, 2017, Wells Fargo promptly continued to pursue the Foreclosure Action. *Id.* ¶ 20.

40.    On May 24, 2017, Wells Fargo filed with the Court in the Foreclosure Action a Notice of Entry of this Court's Order granting Wells Fargo relief from the automatic stay. *Id.* ¶ 21.

41.    On September 28, 2017, the Court in the Foreclosure Action entered an Order of Reference by which the court granted Wells Fargo's Motion for Summary Judgment, which included a finding that Wells Fargo is the owner and holder of the Loan Documents and is entitled to enforce the Loan Documents, and the Court appointed a Referee to compute the amount owed by the Debtor to Wells Fargo. *Id.* ¶ 22.

42.    On January 11, 2018, the Referee in the Foreclosure Action executed a Report of Amount Due. *Id.* ¶ 23.

43.    On March 12, 2018, Wells Fargo filed a Motion for Entry of Final Judgment of Foreclosure and Sale and Related Relief (the "Motion for Judgment") in the Foreclosure Action. *Id.* ¶ 24.

44.    On July 4, 2018, the Debtor filed an Opposition to Wells Fargo's Motion for Judgment and the Debtor filed a Cross-Motion seeking to vacate the prior Order granting summary judgment in favor of Wells Fargo. *Id.* ¶ 25.

45.    On July 6, 2018, Wells Fargo filed its Reply in further support of its Motion for Judgment and in opposition to the Cross-Motion. *Id.* ¶ 26.

46.     On July 10, 2018, Wells Fargo and the Debtor appeared before the Court in the Foreclosure Action for a hearing on the Motion for Judgment and the Cross-Motion.  *Id.* ¶ 27. At that hearing, the Court in the Foreclosure Action stated that the Debtor's Cross-Motion was denied and that the Motion for Judgment was submitted.  *Id.*

47.     On July 24, 2018, the Court in the Foreclosure Action entered the Order denying the Cross-Motion.  *Id.* ¶ 28.

48.     On August 24, 2018, the Court in the Foreclosure Action entered the Foreclosure Judgment by which the Court granted the Motion for Judgment.  *Id.* ¶ 29.

49.     Pursuant to the Foreclosure Judgment, a foreclosure sale of the Mortgaged Property was scheduled with the Referee for November 8, 2018. *Id.* ¶ 30.

50.     Wells Fargo then made numerous requests of the Debtor for access to the Mortgaged Property so that Wells Fargo could conduct an updated appraisal and environmental inspection of the Mortgaged Property.  *Id.* ¶ 31.  The Debtor refused to allow Wells Fargo to have access to the Mortgaged Property.  *Id.*

51.     As a result, on September 11, 2018, Wells Fargo filed a Motion for Access to the Mortgaged Property by Order to Show Cause in the Foreclosure Action.  *Id.* ¶ 32.

52.     On September 14, 2018, the Court in the Foreclosure Action signed the Order to Show Cause and directed the parties to appear for a hearing on the Motion for Access on October 2, 2018 at 9:30 a.m.  *Id.* ¶ 33.

53.     The Debtor failed to file any opposition to the Motion for Access.  *Id.* ¶ 34. Instead, when the parties appeared for the hearing in the Foreclosure Action on October 2, 2018, the Debtor advised Wells Fargo and the Court that the Debtor had filed this Bankruptcy Case on the afternoon of October 1, 2018.  *Id.*

**Wells Fargo's Claim**

54.     Wells Fargo intends to file a Proof of Claim in this case. As of the Petition Date, pursuant to the Foreclosure Judgment, the Debtor owed Wells Fargo the amount of at least $938,086.17, itemized as follows:[3]

| | |
|---|---|
| Judgment debt | $883,171.00 |
| Pre-judgment interest at the rate of 6% under the Loan Documents (Nov. 6, 2017 – Aug. 24, 2018 = 292 days x $145.178794521 per diem) | $42,392.21 |
| Post-judgment interest at the rate of 9% under CPLR § 5004 (Aug. 25, 2018 – Oct. 1, 2018 = 39 days x $217.768191781 per diem) | $8,492.96 |
| Court costs | $1,530.00 |
| Attorneys' fees | $2,500.00 |
| **Total Due as per the Foreclosure Judgment as of Oct. 1, 2018** | **$938,086.17** |

*Id.* ¶¶ 1, 35-36 & Ex. A (Foreclosure Judgment).

## RELIEF REQUESTED

55.     Wells Fargo seeks entry of an Order granting Wells Fargo relief from the automatic stay (and waiver of the 14-day stay of such an Order under Fed. R. Bankr. P. 4001(a)(3)) so that Wells Fargo may continue the Foreclosure Action, and for such other and further relief as the Court deems just and proper, as set forth in the proposed Order that accompanies this Motion.

---

[3] The Debtor has acknowledged a secured debt in the amount of $863,953.06 owed to Wells Fargo in its Form 204 and Schedule D filed in conjunction with its Petition. *See* Doc. #1 (Form 204), Doc. #7 (Schedule D).

## <u>LEGAL ARGUMENT</u>

56.    Pursuant to Section 362(d) of the Bankruptcy Code, the Court "*shall* grant relief from the [automatic] stay" on various grounds, including:

(1)    "for cause, including the lack of adequate protection of an interest in property" which interest is held by the moving party; or

(2)    "with respect to a stay of an act against property . . . , if –

(A)    the debtor does not have an equity in such property; and

(B)    such property is not necessary to an effective reorganization . . . . "

11 U.S.C. § 362(d)(1)-(2) (emphasis added).

57.    As the moving party, Wells Fargo has the initial burden of proof on the issue of the Debtor's equity in the Mortgaged Property.  The Debtor, however, has the burden of proof on all other issues.  11 U.S.C. 362(g); *In re RYYZ, LLC*, 490 B.R. 29, 35 (Bankr. E.D.N.Y. 2013); *Matter of Sulzer*, 2 B.R. 630, 635 (Bankr. S.D.N.Y. 1980).

58.    Here, as detailed below, Section 362(d)(1) and (2) each provide grounds for relief from the automatic stay in this case and the Court should permit Wells Fargo to complete the Foreclosure Action.

### I.    There Is "Cause" For Relief From The Stay Under Section 362(d)(1) Because Wells Fargo's Interest Is Not Adequately Protected.

59.    In this case, there is "cause" for relief from the stay under Section 362(d)(1) based on a lack of adequate protection with respect to Wells Fargo's interest in the Mortgaged Property. *See In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 749 (Bankr. S.D.N.Y. 2004).  For purposes of stay relief, where a debtor's continual failure to make monthly payments under loan documents corresponds to a non-existent equity cushion or even a slight equity cushion, courts have found that such an equity cushion does not constitute adequate protection where post-petition interest is

accruing, and the debtor is not able to pay expenses as they come due. *See id.; In re Fortune Smooth (U.S.) Ltd.,* 1993 WL 261478 at \*6 (Bankr. S.D.N.Y. July 6, 1993).

60.     Here, there is no dispute that the Debtor is past due on the Loan since December 2015. Fitzgerald-Kvapil Decl. ¶ 9. In other words, there is no dispute that the Debtor failed to even make about half of the reduced monthly payments that were owed to Wells Fargo during the Modification Period and the Debtor failed to make any of the monthly payments due thereafter. *Id.* ¶ 7.

61.     In addition, there is no dispute that the Foreclosure Judgment has been entered against the Debtor, finding that Wells Fargo is owed a total of at least $938,086.17, including post-judgment interest. Cherico Decl. ¶¶ 1, 35-36 & Ex. A (Foreclosure Judgment).

62.     On the other hand, the value of the Mortgaged Property as of April 11, 2017 is only $600,000.[4] Fitzgerald-Kvapil Supp. Decl. ¶¶ 4-5 & Ex. A (Appraisal Report).[5]

63.     In short, the Debtor is past due on its Loan since December 2015, the Foreclosure Judgment was entered against the Debtor in August 2018 and there is no equity in the Mortgaged Property. As a result, Wells Fargo's interest as a secured creditor is not adequately protected and, pursuant to § 362(d)(1) of the Bankruptcy Code, Wells Fargo should be granted relief from the stay to pursue the Foreclosure Action.

---

[4] The Debtor claims that the Mortgaged Property is worth $600,000 based on the April 2017 appraisal obtained by Wells Fargo. Doc. #7 (Schedule A/B, Part 9 at #55). Prior to the filing of this Bankruptcy Case, Wells Fargo made numerous requests of the Debtor for access to the Mortgaged Property so that Wells Fargo could conduct an updated appraisal and environmental inspection prior the scheduled foreclosure sale date of November 8, 2018. Cherico Decl. ¶ 31. The Debtor refused to allow Wells Fargo to have access to the Mortgaged Property. *Id.* The Debtor filed this Bankruptcy Case on the eve of the hearing scheduled by the Court in the Foreclosure Action by Order to Show Cause on Wells Fargo's Motion for Access. *Id.* ¶¶ 32-34.

[5] References to the "Fitzgerald-Kvapil Supp. Decl." are to the Supplemental Declaration of Karen Fitzgerald-Kvapil, dated May 3, 2017, which was previously filed in the First Bankruptcy Case and a copy of which accompanies this Motion.

**II.    The Court Should Grant Relief From The Stay Under Section 362(d)(2) Because The Debtor Does Not Have Equity In The Mortgaged Property And Cannot Propose An Effective Plan Of Reorganization.**

64.    Wells Fargo is entitled to relief from the automatic stay under Section 362(d)(2) because the Debtor does not have equity in the Mortgaged Property and the Mortgaged Property is not necessary to an effective reorganization.  The legislative purpose of Section 362(d)(2) is directed toward real property mortgage foreclosures where, as here, the petition for relief was filed on the eve of foreclosure.  *Matter of Anchorage Boat Sales, Inc.*, 4 B.R. 635, 640 (Bankr. E.D.N.Y. 1980); *Matter of Sulzer*, 2 B.R. at 635.

65.    First, a secured creditor should be granted relief from the automatic stay under Section 362(d)(2) where the creditor shows:  (1) the amount of its claim; (2) that its claim is secured by a valid, perfected lien in property of the estate; and (3) that the debtor lacks equity in the property.  *In re Elmira Litho, Inc.*, 174 B.R. 892, 901 (Bankr. S.D.N.Y. 1994).

66.    Here, the Debtor has no equity in the Mortgaged Property.  As detailed in Part I, above, although Wells Fargo is owed a total of least $938,086.17 as of the Petition Date, the value of the Mortgaged Property is only $600,000 according to the most recent appraisal obtained by Wells Fargo.  Fitzgerald-Kvapil Supp. Decl. ¶¶ 4-5 & Ex. A (Appraisal Report).

67.    Second, the Debtor bears the burden of proving that the Mortgaged Property is "necessary to an effective reorganization."  *In re RYYZ, LLC*, 490 B.R. at 35; *Matter of Sulzer*, 2 B.R. at 635.  The Debtor must prove that "the property is essential for an effective reorganization *that is in prospect*."  *In re RYYZ, LLC*, 490 B.R. at 36 (quoting *United States Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376 (1988)) (emphasis in original).  In other words, the Debtor must prove that there is "a reasonable possibility of a successful reorganization within a reasonable time."  *In re RYYZ, LLC*, 490 B.R. at 36.  "Where

the debtor has not shown that it can obtain confirmation of a plan, it has not met its burden of showing that the property is necessary to an effective reorganization." *In re Diplomat Electronics Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988).

68.    Here, the Debtor cannot show that the Mortgaged Property is necessary to an effective plan of reorganization.  There is no reason to think that the Debtor can obtain confirmation of a plan of reorganization.  Section 1129(a)(8) of the Bankruptcy Code requires that all impaired classes accept the plan of reorganization.  As detailed above, however, Wells Fargo is undersecured by at least $338,086.17 as of the Petition Date.  The unsecured creditors disclosed in the Debtor's bankruptcy petition hold total claims of $263,992.00.  *See* Doc. #7 (Schedule E).  Wells Fargo will therefore control the unsecured creditor class in any plan and there is no reason to think that the Debtor will be able to put forth a plan that will be acceptable to Wells Fargo.

69.    In fact, as detailed above, although Wells Fargo gave the Debtor multiple opportunities to reinstate the Loan, even after the Debtor defaulted on its reduced monthly payments due during the Modification Period, the Debtor was unable to do so and the Debtor's financial documentation submitted to Wells Fargo made it clear that the Debtor's income could not support reinstatement of the Loan.  Fitzgerald-Kvapil Decl. ¶¶ 10-14.

70.    Moreover, as demonstrated by the Debtor's decision to abandon the First Bankruptcy Case, and as stated by the U.S. Trustee in its Motion to Dismiss the First Bankruptcy Case, "as the Debtor does not appear to be able to propose a confirmable plan, there is no likelihood of rehabilitation."  Cherico Decl. ¶¶ 5-9 (quoting U.S. Trustee's Motion to Dismiss).

71.     Nothing in the filings made by the Debtor in this Bankruptcy Case suggests otherwise. To the contrary, according to the Debtor's Schedules, the Debtor has $9,000 in cash on hand, $15,000 in accounts receivable, one vehicle valued at $10,000 and some equipment valued at $13,200. *See* Doc. #7 (Schedules A/B). In addition, Although Wells Fargo has repeatedly advised the Debtor since the Foreclosure Action was commenced in April 2016 that the Debtor must refinance with another lender if the Debtor wants to retain the Mortgaged Property, the Debtor has failed to demonstrate any ability to refinance its loan.

72.     In short, the Debtor cannot show that there is a reasonable prospect of successful reorganization within a reasonable time.

73.     Accordingly, Wells Fargo should be granted relief from the automatic stay under Section 362(d)(2) so that it may pursue the Foreclosure Action.

### III.     There Is "Cause" For Relief From The Stay Under Section 362(d)(1) Based On The Debtor's Bad Faith Filing Of Its Petition.

74.     "Although not expressly stated in section 362(d)(1), it is well established that a debtor's bad faith constitutes 'cause' for relief from the automatic stay under that section." *In re 68 West 127 Street, LLC*, 285 B.R. 838, 843 (Bankr. S.D.N.Y. 2002). Once the movant makes an initial showing of "cause," the burden shifts to the debtor "for all issues other than the debtor's equity in property." *In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 749 (Bankr. S.D.N.Y. 2004).

75.     Whether a bankruptcy petition was filed in "bad faith" is analyzed under the eight-factor test provided for in *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1310 (2d Cir. 1997), which factors are set forth in the underlined text below. The following demonstrates that, under this test, the Debtor's Petition, filed for purposes of delaying the Foreclosure Action, meets the criteria for a "bad faith" filing.

(1)    <u>The debtor has only one asset</u>.  Although the Debtor claims to own some assets in addition to the Mortgaged Property, the value of those assets is nominal when compared to the value of the Mortgaged Property.  In any event, the other factors discussed below weigh in favor of stay relief.

(2)    <u>The debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors</u>.  Here, the Debtor's bankruptcy petition shows unsecured claims totaling approximately $263,992.00.  *See* Doc. #7 (Schedule E).  Wells Fargo's secured claim is at least $938,086.17 as of the Petition Date.  Cherico Decl. ¶¶ 1, 35-36 & Ex. A (Foreclosure Judgment).  Unsecured claims held by the other creditors are therefore significantly less than Wells Fargo's secured claim.

(3)    <u>The debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt</u>.  Here, the Mortgaged Property is the Debtor's sole asset with any real value and is the subject of the Foreclosure Action commenced by Wells Fargo following the failure to make the monthly debt service payments on the Loan since December 20, 2015.

(4)    <u>The debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action</u>.  The largest creditor of the Debtor, by far, is Wells Fargo.  Indeed, the Debtor's Schedules have revealed no other secured creditors.  Doc. #7 (Schedule D).  Furthermore, the Debtor's Schedules have revealed unsecured creditors whose unsecured claims, in the total amount of $263,992.00, pale in comparison to the $938,086.17 or more that is owed to Wells Fargo.  Doc. #7 (Debtor's Schedules D-F).  As a result, this is in essence a two-party dispute that can and should be resolved in the prior pending Foreclosure Action.  This is an "important factor to consider in determining whether a Chapter 11 case was initiated in good faith" because

"Chapter 11 was never intended to be used as a fist in a two party bout." *In re HBA East, Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988).

(5)    The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.  If there was any doubt as to whether the Debtor's First Bankruptcy Case was filed to merely delay the Foreclosure Action, most doubt was removed when the Debtor failed to pursue the First Bankruptcy Case after Wells Fargo's motion for stay relief was granted in that Case and the Case was subsequently dismissed due to the Debtor's failure to comply with its obligation to file monthly operating statements or a proposed plan of reorganization.  Now that the Debtor has again filed for bankruptcy, less than one year after the First Bankruptcy Case was dismissed due to the Debtor's lack of diligence in pursuing that Case, there can be no doubt as to the true motive of the Debtor in filing for bankruptcy – *i.e.,* to delay the foreclosure sale that was scheduled for November 8, 2018 by virtue of the automatic stay afforded by the filing of this Bankruptcy Case.  The Debtor's use of the courts for the sole purpose of delaying Wells Fargo's enforcement of its rights constitutes bad faith.  *See, e.g., In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) (finding it "clear that the debtor did not file its petition to reorganize, but rather as a litigating tactic…").

(6-7)    The debtor has little or no cash flow.  The debtor cannot meet current expenses including the payment of personal property and real estate taxes.  These factors are ultimately concerned with whether the Debtor has sufficient cash flow to fund a plan of reorganization.  "Reorganization presupposes the existence of monies to pay the expenses of operating a business *and* assets to generate the funds for implementation of a reorganization plan." *In re HBA East, Inc.*, 87 B.R. at 261 (emphasis added).  Here, as the Debtor indicates in

its Petition, the Debtor has virtually no cash on hand and few receivables.  Thus, the Debtor has hardly any cash flow to use to pay taxes or for any other purpose.

(8)  <u>The debtor has no employees</u>.  The Debtor does not report (and Wells Fargo is not aware of) any employees.

76.  In short, each factor for the Court's consideration supports a finding that the Debtor filed the Petition in "bad faith."  Accordingly, Wells Fargo is entitled to relief from the automatic stay pursuant to § 362(d)(1) of the Bankruptcy Code for this reason as well.

**WHEREFORE**, Wells Fargo Bank, National Association, respectfully requests entry of an Order granting the relief requested in this Motion, including specifically:

(a)  Granting Wells Fargo relief from the automatic stay to continue the Foreclosure Proceeding and to pursue and enforce any and all of its legal and equitable rights and remedies with respect to the Mortgaged Property and the Debtor; and

(b)  Granting Wells Fargo such other and further relief as the Court deems just and proper.

Dated:  October 31, 2018

McCARTER & ENGLISH, LLP

By: *s/ Joseph J. Cherico*
     Joseph J. Cherico (JC 5830)

One Canterbury Green
201 Broad Street
Stamford, CT 06901
Tel.:  (203) 399-5900
Fax:  (203) 399-5800
E-mail:  jcherico@mccarter.com

*Attorneys for Creditor*
   *Wells Fargo Bank, National Association*

28431419.1